IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THE COLONIAL PRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV0048 |
| | ) | |
| V. | ) | |
| | ) | |
| COTHRAN PRINTING EQUIPMENT, INC., and COTHRAN'S GRAPHIC ARTS EQUIPMENT COMPANY, | ) ) ) ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |

The plaintiff, the Colonial Press Inc., has filed a two-count amended complaint against the defendants, Cothran Printing Equipment, Inc., and Cothran's Graphic Arts Equipment Company, alleging breaches of express and implied warranties. (See generally First Am. Compl., filing 20.)[1] The defendants have filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (See filing 24.) For the reasons set forth below, I find that the defendants' motion must be granted.

## I.   BACKGROUND

The allegations set forth in the First Amended Complaint, which must be taken as true for the purposes of this memorandum, see Morton v. Becker, 793 F.2d 185,

---

[1] The complaint has been amended twice. (See First Am. Compl., filing 20; Notice of Removal, filing 1, Ex. B (Am. Compl.); filing 26, Defs.' Index of Evid., Ex. 1 (Compl.).) Thus, although the operative complaint is entitled "First Amended Complaint," it would have been more accurate to label it the "Second Amended Complaint."

187 (8th Cir. 1986), may be summarized as follows. At relevant times, the plaintiff was a corporation engaged in the business of commercial printing. (See First Am. Compl., filing 20, ¶¶ 1, 5.) The defendants were distributors of printing presses manufactured by Komori Corporation and Komori America Corporation. (See id. ¶ 6.)[2] Among the presses sold by the defendants was the "Komori Lithrone, Model L640-III, Series 5, Specification Summary SS-40-2/5/97, six color 28x40 offset press," which, "together with various ancillary and accessory machinery," shall be referred to hereafter as "the Press." (Id.)

On or about November 8, 1998, the plaintiff entered into a written contract to purchase the Press from the defendants for $1,864,000.00. (See First Am. Compl., filing 20, ¶ 7; see also id., filing 20, Ex. A.) The contract includes the following term:

> Seller warrants for a period of one year labor, one year on parts from date of initial installation that new Machinery erected under Seller's supervision is free from defects in material and workmanship at the date of shipment. "Arrival at Colonial Press Inc."
>
> THERE IS NO WARRANTY OF MERCHANTABILITY, FITNESS OR INFRINGEMENT. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE FACE HEREOF. THERE ARE NO WARRANTIES EXPRESS OR IMPLIED OR ANY AFFIRMATION OF FACT OR REPRESENTATION EXCEPT AS SET FORTH HEREIN.

---

[2]The nature of the relationship between Cothran Printing Equipment, Inc. (Cothran) and Cothran's Graphic Arts Equipment Company (Cothran's Graphics) is not clearly defined in the First Amended Complaint. The plaintiff seems unsure whether Cothran's Graphics "did business as Cothran Printing Equipment, Inc.," (First Am. Compl., filing 20, ¶ 6) or whether Cothran was "acting as agent for Cothran's Graphics" at relevant times (id. ¶ 8). For the purposes of this memorandum, the relationship between Cothran and Cothran's Graphics is immaterial, and I shall simply attribute all actions performed by either defendant to the defendants jointly.

(First Am. Compl., filing 20, Ex. A at 2 (initials and dates accompanying the parties' handwritten alterations have been omitted).)[3] The contract also contains a "choice-of-law" provision stating, "This agreement shall be governed by the laws of the State of Colorado." (Id.)

The Press was installed at the plaintiff's place of business on or about July 10, 1999. (See First Am. Compl., filing 20, ¶ 9.) "Commencing almost immediately following initial installation of the Press, significant problems developed . . . ." (Id. ¶ 14.) "These problems included . . . auto roller washers not working properly, malfunctioning gripper bites, KMS communication errors, ink balancing that caused color imbalancing, feeder problems and problems with the dryer unit[,] which could not dry 'coat' jobs quickly enough." (Id.) The plaintiff "promptly and repeatedly" notified the defendants of these problems, but the defendants replied by suggesting that the problems "were probably a result of the Plaintiff's inexperience and inability to use the printing press effectively," and that "the Plaintiff . . . [was] expecting the printing press to perform at a higher level than should be reasonably expected." (Id. ¶ 15.) In other words, although the defendants stated previously that they would fix "any specific defect found in the Press," (id.) the defendants did not respond to the plaintiff's complaints by repairing or replacing the Press ( see id. ¶ 31).

In April 2004, the plaintiff consulted a third party and learned that the Press's dryer unit, which had "never functioned properly," was installed backwards, such that it blew hot air back into the Press. (First Am. Compl., filing 20, ¶ 16.) The failures of various parts of the Press–many of which had been repaired or replaced by the plaintiff at its own expense–can be attributed to this defect. ( See id.)

---

[3]"Ordinarily, only the facts alleged in the complaint are considered in ruling on a 12(b)(6) motion. However, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted).

On July 8, 2004, the plaintiff filed a complaint in the District Court of Sarpy County, Nebraska, alleging that Cothran Printing Equipment, Inc., Komori Corporation, and Komori America Corporation breached express and implied warranties and negligently designed, manufactured, and installed the Press. (See generally filing 26, Defs.' Index of Evid., Ex. 1.)[4] The plaintiff amended its complaint on December 29, 2004, adding Cothran's Graphic Arts Equipment Company as a defendant. (See Notice of Removal, filing 1, Ex. B.)[5] After the defendants removed the case to this court (see Notice of Removal, filing 1), Komori Corporation and Komori America Corporation were dismissed from the action (see filings 12, 18) and the plaintiff was granted leave to amend its complaint once again (see filings 15, 19; see also First Am. Compl., filing 20). In this latest version of its complaint, the plaintiff named only Cothran Printing Equipment, Inc., and Cothran's Graphic Arts Equipment Company as defendants and dropped its claim that the defendants negligently designed, manufactured, and installed the Press. (See generally First Am. Compl., filing 20.) Thus, only two causes of action remain: Count I alleges that the defendants breached an express warranty, and Count II alleges that the defendants breached implied warranties. (See id.)

The defendants have moved to dismiss the complaint, arguing that the

---

[4] Although the state court complaint is not attached to or incorporated into the First Amended Complaint, its authenticity is not disputed by the parties and it is, of course, a matter of public record. It has been offered by the defendant solely for the purpose of establishing the date of the commencement of the action, (see Defs.' Index of Evid., filing 26), and the plaintiff does not dispute this date. Therefore, I shall invoke a narrow exception to the general rule that matters outside the pleadings may not be considered in connection with a Rule 12(b)(6) motion to dismiss. See, e.g., Lynch v. Board of State Examiners of Electricians, 218 F. Supp. 2d 3, 6 n.7 (D. Mass. 2002) (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993)).

[5] The amended complaint too is a public record of undisputed authenticity. Therefore, for the reasons stated above, it shall be considered for the limited purpose of summarizing the relevant background. (See supra note 4.)

4

plaintiff's claims are barred by the applicable statute of limitations. (See Defs.' Br. in Supp. of Mot. to Dismiss First Am. Compl. (Defs.' Br.), filing 25, at 3-7.) In addition, the defendants argue that Count II must be dismissed because the contract disclaims all implied warranties (see id. at 7-8), and that the plaintiff is not eligible to recover consequential damages under either count because the contract limits the defendants' liability for such damages (see id. at 8-10).

## II.   STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), "a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In resolving such motions, all well-pleaded allegations in the complaint must be taken as true, and the complaint and all reasonable inferences arising therefrom must be weighed in favor of the plaintiff. Morton, 793 F.2d at 187.

## III.   ANALYSIS

### A.   Whether the Plaintiff's Claims Are Barred by the Statute of Limitations

The defendants argue first that the plaintiff's claims are barred by the applicable statue of limitations. I note preliminarily that the parties dispute whether the applicable statute of limitations is Nebraska's or Colorado's. The defendants assert that, in view of the contract's "choice-of-law" provision, Colorado's three-year statute of limitations applies. (See Defs.' Br., filing 25, at 3-5 (citing Colo. Rev. Stat. Ann. § 4-2-725 (West 2002)).) The plaintiff replies that procedural matters-such as the relevant limitations period-are governed by the law of the forum state, and therefore Nebraska's four-year statute of limitations applies. (See Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss (Pl.'s Br.), filing 27, at 4-6 (citing Whitten v. Whitten, 548

N.W.2d 338, 340 (Neb. 1996); Calvert v. Roberts Dairy Co., 496 N.W.2d 491 (Neb. 1993); FDIC v. Nordbrock, 102 F.3d 335 (8th Cir. 1996); Neb. Rev. Stat. Ann. U.C.C. § 2-725 (Lexis 2000)).) I find that I need not determine whether Nebraska or Colorado law applies, for even under Nebraska's more generous statute of limitations, it is clear that the plaintiff's complaint was not timely filed.[6]

Under Nebraska law, "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Neb. Rev. Stat. Ann. U.C.C. § 2-725(1) (Lexis 2000).

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Id. § 2-725(2). Here, tender of delivery was made on or about July 10, 1999, when the installation of the Press was completed. (See First Am. Compl., filing 20, ¶ 9.) The plaintiff did not file its complaint until July 8, 2004, nearly five years after the installation. Therefore, the complaint was not timely filed unless, pursuant to the "future performance" exception, the date of accrual was continued for approximately one year.[7]

---

[6] I note parenthetically that the plaintiff has not resisted the defendants' argument that the complaint was not timely filed under Colorado law. (See generally Pl.'s Br., filing 27.)

[7] The "future performance" exception does not apply to claims based upon implied warranties. See Controlled Environments Constr., Inc. v. Key Indus. Refrigeration Co., 670 N.W.2d 771, 779 (Neb. 2003); Murphy v. Spelts-Schultz Lumber Co. of Grand Island, 481 N.W.2d 422, 430-31 (Neb. 1992). Thus, it is clear

6

The "future performance" exception will apply if the "warranty explicitly extends to future performance of the goods." Neb. Rev. Stat. U.C.C. § 2-725(2). As I noted above, the warranty provides, "Seller warrants for a period of one year labor, one year on parts from date of initial installation that new Machinery erected under Seller's supervision is free from defects in material and workmanship . . . ." (First Am. Compl., filing 20, Ex. A at 2.) I find that this warranty explicitly extended to the future performance of the Press. See, e.g., Grand Island Express v. Timpte Indus., Inc., 28 F.3d 73, 75 (8th Cir. 1994) (citing Grand Island School Dist. # 2 of Hall County v. Celotex Corp., 279 N.W.2d 603, 609 (Neb. 1979)); Controlled Environments Constr., Inc. v. Key Indus. Refrigeration Co., 670 N.W.2d 771, 780 (Neb. 2003) ("If the seller affirms that the goods will have a certain quality or be free from defects for a stated period of time, that constitutes a warranty that the goods will conform to that affirmation and have that quality throughout the stated period, and thus explicitly extends to the future." (Quoting Joswick v. Chesapeake Mobile Homes, Inc., 765 A.2d 90, 96 (Md. 2001))). Therefore, the "future performance" exception applies, and "the four-year statute of limitations was tolled until the time the breach was or should have been discovered" by the plaintiff. Grand Island Express, 28 F.3d at 75.

The determination of the time the breach was or should have been discovered focuses "on the buyer's knowledge of the nature and extent of the problem(s) with the goods." Controlled Environments Constr., Inc. v. Key Indus. Refrigeration Co., 670 N.W.2d 771, 783 (Neb. 2003). "It is only when a buyer discovers, or should have discovered, facts sufficient to doubt the overall quality of the goods that § 2-725(2) is satisfied and that the statute of limitations begins to run." Id. "The determination of a discovery date is essentially an inquiry into all of the facts and circumstances facing the buyer; thus, a court should examine all relevant evidence that bears on the

---

that the plaintiff's second cause of action, which alleges breaches of implied warranties, was not timely filed.

7

buyer's discovery." Id. at 784.  In other words, this determination is fact-intensive and ill-suited to resolution via a Rule 12(b)(6) motion.  In this case, however, the First Amended Complaint demonstrates conclusively that the plaintiff did not file this action within four years of the "discovery date," because the plaintiff has alleged that "[a]lmost immediately following installation of the Press, Plaintiff discovered the breach of warranty and immediately gave notice of the breach to Defendant."  (First Am. Compl., filing 20, ¶ 22.)  The plaintiff supported this averment with specific facts, stating, "almost immediately following initial installation of the Press, significant problems developed" with the "auto roller washers," "gripper bites," "KMS communication," "ink balancing," "feeder," and "dryer unit."  (Id. ¶ 14.) Indeed, the dryer unit was alleged to have "never functioned properly."  (Id. ¶ 16.) These allegations clearly establish that the plaintiff discovered facts sufficient to doubt the overall quality of the Press "almost immediately" after it was installed on or about July 10, 1999.  This means that the statute of limitations began to run at that time, and it necessarily follows that the four-year limitations period expired before the plaintiff filed its complaint on July 8, 2004.

The plaintiff argues that it neither discovered nor should have discovered the defendants' breach before the expiration of the express warranty on July 10, 2000. (See Pl.'s Br. at 8-9.)  This argument is belied by the allegations discussed above. The plaintiff also argues that the defendants' alleged breach was not discovered until a third party conferred with the plaintiff in April 2004 and determined that the dryer was blowing hot air back into the Press.  (See Pl.'s Br. at 9.)  This argument too is belied by the allegations discussed above.  Although the complaint does state that "[t]he discovery of the particular drying problem could not have been reasonably discovered by Plaintiff until April, 2004," (see First Am. Compl., filing 20, ¶ 17 (emphasis added); see also id. ¶ 22) this allegation cannot support an inference that the plaintiff did not discover "facts sufficient to doubt the overall quality of the goods" sometime prior April 2004–especially since the plaintiff has alleged specifically that it considered the defendant to be in breach of the warranty almost

immediately after the Press was installed.

Finally, the plaintiff argues that "[a]s a policy matter, the Defendants should not be able to escape liability under the express warranty for their failure to discover the problem with the dryer unit and their inaction in getting the Press to function properly by the end of the term of the express warranty . . . ." (Pl.'s Br. at 9.) The plaintiff also suggests that it relied on the defendants "superior knowledge" and "was led to believe that the problems with the Press were the result of its own incompetency in operation of the Press." (Id.) The plaintiff has cited no authority in support of its argument, nor has it identified any legal theory that might further toll the statute of limitations.[8] I find that, although the allegations set forth in the First Amended Complaint do tend to support an inference that the defendants "refused to concede the validity of [the plaintiff's] warranty claim," this, without more, is not a sufficient reason for extending the time limit for filing suit. Grand Island Express v. Timpte Indus., Inc., 28 F.3d 73, 75 (8th Cir. 1994).

In sum, I find that when all well-pleaded allegations in the First Amended Complaint are taken as true and the plaintiff is given the benefit of all reasonable inferences arising therefrom, I cannot avoid the conclusion that the plaintiff discovered facts sufficient to doubt the overall quality of the Press soon after its installation, notwithstanding the fact that the backward-installed dryer was not specifically diagnosed until April 2004. Indeed, the plaintiff clearly alleged that it

---

[8]I note parenthetically that if the plaintiff means to suggest that the defendants ought to be estopped from invoking the statute of limitations defense, its argument falls well short. Quite simply, the plaintiff has neither alleged nor argued that the elements of equitable estoppel are satisfied. See Schendt v. Dewey, 520 N.W.2d 541, 548 (Neb. 1994) (discussing elements that must be pled to sustain a cause of action that depends on equitable estoppel); Keene v. Teten, 602 N.W.2d 29, 39 (Neb. Ct. App. 1999) (setting forth elements of equitable estoppel); Hamilton v. Hamilton, 496 N.W.2d 507, 512 (Neb. 1993) (same); Woodard v. City of Lincoln, 588 N.W.2d 831, 836 (Neb. 1999) (same).

discovered the breach of warranty and observed a number of definite, "significant" problems with the Press "almost immediately" after installation. Therefore, the statute of limitations was tolled only briefly before the breach was discovered–that is, the statute began to run almost immediately after the Press was installed in July 1999–and the four-year limitations period expired well before the plaintiff filed its complaint in July 2004. Since the plaintiff has not persuaded me that its failure to comply with the statute of limitations ought to be excused, I find that the complaint must be dismissed.

### B. The Defendants' Remaining Arguments

The defendants argue that Count II must be dismissed because the contract disclaims all implied warranties (see Defs.' Br. at 7-8), and assert that the contract limits their liability for consequential damages (see id. at 8-10). In view of my determination that the complaint was not timely filed, these arguments are now moot.

IT IS ORDERED that the defendants' motion to dismiss, filing 24, is granted.

DATED this 8th day of June, 2005.

BY THE COURT:

s/ Richard G. Kopf
United States District Judge